```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
DEISGN PICS INC.,                                              REPORT AND
                        Plaintiff,                             RECOMMENDATION
            - against -
PBH NETWORK, INC., et al.                                      20-CV-1096 (MKB) (JO)
                        Defendants.
-----------------------------------------------------------X
```

James Orenstein, Magistrate Judge:

Plaintiff Design Pics Inc. ("DPI"), has accused defendant PBH Network, Inc. d/b/a All That's Interesting ("PBH") of copyright infringement and violating its rights under the Digital Millennium Copyright Act. *See* Docket Entry ("DE") 1 (Complaint); 17 U.S.C. § 101 *et seq.*; 17 U.S.C. § 1202 *et seq.* (the "DMCA"). PBH has never responded, and DPI now seeks a default judgment. *See* DE 11. Upon a referral from the Honorable Margo K. Brodie, United States District Judge, I now make this report and, for the reasons set forth below, respectfully recommend that the court deny the motion with respect to the DMCA claim, dismiss that cause of action for failure to state a claim, grant the motion as to the infringement claim, and enter a default judgment against PBH in the total amount of $4,634.00, consisting of $750.00 in statutory damages, $3,484.00 in attorney's fees, and $400.00 in costs.

I.      Background

DPI is a digital media stock photograph company that secures the rights to various images and then licenses others to reproduce them. As relevant here, it secured the exclusive rights to a certain photograph of the United States flag (the "Photo"). PBH later published a copy of the Photo without authorization on a website it operates. *See* Complaint ¶¶ 7-13.

DPI filed the Complaint on February 28, 2020, asserting one count of copyright infringement and one count of intentional removal of copyright management information ("CMI"). *See* Complaint ¶¶ 14-25. DPI effectively served process on PBH on March 6, 2020. *See* DE 8. PBH

never responded, and at DPI's request, the Clerk entered its default on April 15, 2020. *See* DE 9; DE 10. DPI filed the instant motion on May 11, 2020, along with a supporting memorandum and supporting declarations from DPI President Rick Carlson and its counsel Michael D. Steger ("Steger"), each with exhibits. *See* DE 11 (notice of motion); DE 11-1 ("Memo."); DE 11-2 (Carlson Decl.); DE 11-3 (Carlson Decl. Ex. A) (copyright registration with a cropped copy of the Photo attached); DE 11-4 (Carlson Decl. Ex. B) (copy of PBH's publication of the Photo); DE 11-5 (Carlson Decl. Ex. C) (copies of invoices for DPI's licensing of other images); DE 11-6 (Steger Decl.); DE 11-11 (Steger's billing records). The court referred the motion to me by order dated May 15, 2020. By order dated May 18, 2020, I offered both parties an opportunity to file supplemental briefings. Neither party has done so.

II.  Discussion

  A.  Default

When a defendant defaults, the court must accept as true all well-pleaded allegations in the complaint, except those pertaining to the amount of damages. *See* Fed. R. Civ. P. 8(b)(6); *Finkel v. Romanowicz*, 577 F.3d 79, 81 n.1 (2d Cir. 2009) (citing *Greyhound Exhibitgroup, Inc. v. E.LU.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992)). The fact that a complaint stands unanswered does not suffice to establish liability on its claims; a default does not establish conclusory allegations, nor does it excuse any defects in the plaintiff's pleading. With respect to liability, a defendant's default does no more than concede the complaint's factual allegations; it remains the plaintiff's burden to demonstrate that those uncontroverted allegations, without more, establish the defendant's liability on each asserted cause of action. *See, e.g., Greathouse v. JHS Sec. Inc.*, 784 F.3d 105, 116 & n.17 (2d Cir. 2015); *Taizhou Zhongneng Import & Export Co., Ltd. v. Koutsobinas*, 509 F. App'x 54, 56 (2d Cir. 2013); *Finkel*, 577 F.3d at 84; *Greyhound Exhibitgroup*, 973 F.2d at 159.

B.   Liability

1.   Copyright Infringement

To prevail on its first count of copyright infringement, DPI must demonstrate that it owns a valid copyright and that copied elements of the work were original. *See Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991); *Laureyssens v. Idea Group, Inc.*, 964 F.2d 131, 139 (2d Cir. 1992). "The existence of a valid copyright can be established by the introduction into evidence of a Copyright Office certificate of registration." *Korzeniewski v. Sapa Pho Vietnamese Rest. Inc.*, 2019 WL 312149, at *5 (E.D.N.Y. Jan. 3, 2019) (report and recommendation) (internal citations omitted) (quoting *Durham Indus. Inc. v. Tomy Corp.*, 630 F.2d 905, 908 (2d Cir. 1980)), *adopted*, 2019 WL 291145 (E.D.N.Y. Jan. 23, 2019); 17 U.S.C. § 410(c) ("In any judicial proceedings the certificate of a registration made before or within five years after first publication of the work shall constitute *prima facie* evidence of the validity of the copyright and of the facts stated in the certificate."). Moreover, a court may take judicial notice of copyright registrations published in the United States' Copyright Office's registry. *See Papazian v. Sony Music Entertainment*, 2017 WL 4339662, at *6 n.6 (S.D.N.Y. Sept. 28, 2017) (citing *Island Software and Computer Serv., Inc. v. Microsoft Corp.*, 413 F.3d 257, 261 (2d Cir. 2005)).

The Complaint adequately alleges that the Photo was registered with the United States Copyright Office in 2010 and that DPI now owns the Photo's copyright. *See* Complaint ¶¶ 7-10. PBH's default establishes the truth of those allegations.[1] DPI further alleges, and the default

---

[1] DPI includes what it purports to be the copyright registration for the Photo as an exhibit to Carlson's declaration. *See* DE 11-3 (the "Registration"). However, that document – a group registration of scores of images by an array of photographers with the registration number VA 1-784-836 – includes no information that allows the reader to determine whether it registers the copyright for the Photo at issue here. The Complaint alleges that photographer Joe Carini created the Photo. *See* Complaint ¶ 8. The Registration lists only two "Joe Carini images" designated, respectively, with the numbers 01300-90001-37 and 10075-90004-37. Those numbers appear

3

establishes, that PBH published a copy of the Photo on its website without authorization. *See* Complaint ¶¶ 11-13. Those facts suffice to establish PBH's liability for copyright infringement. *See Mango v. Northside Media Grp. LLC*, 2019 WL 4262018, at *2 (E.D.N.Y. Aug. 6, 2019) (report and recommendation), *adopted*, 2019 WL 4261743 (E.D.N.Y. Sept. 9, 2019); *Downs v. Yeshiva World News*, 2019 WL 1261406, at *2 (E.D.N.Y. Feb. 1, 2019) (report and recommendation), *adopted*, 18-CV-0250 (LDH) (JO) (E.D.N.Y. Mar. 12, 2019).

    2. <u>Removal of CMI</u>

To prevail on its second count of intentional removal of CMI, DPI must demonstrate

> (1) the existence of CMI in connection with a copyrighted work; and (2) that [PBH] distributed works or copies of works; (3) while knowing that CMI has been removed or altered without authority of the copyright owner or the law; and (4) while knowing, or having reasonable grounds to know that such distribution will induce, enable, facilitate, or conceal an infringement.

*Mango v. BuzzFeed, Inc.*, 970 F.3d 167, 171 (2d Cir. 2020) (cleaned up).

DPI does not adequately allege in its Complaint that PNH removed any CMI. Indeed, the Complaint does not identify any specific CMI that the Photo ever contained or that PBH removed. Under the heading of "Claims Related to the Subject Photograph" (Complaint at 2), DPI says literally nothing about the Photo having any CMI, and no CMI is apparent from the copy of the Photo the pleading includes: there is no name, watermark, or other identifying information, and no allegation that DPI stored the Photo in electronic form with any metadata that PBH stripped away

---

nowhere else in the record. The Complaint asserts that the Photo's title is "1966686LowRes.jpg" and the latter name appears on a copy of the Photo appended to the Registration. But that copy attached to the Registration cannot have been part of the Registration itself: the Registration is dated October 13, 2010, while the copy of the Photo appended to it bears the date of May 11, 2020 on the same line as the title used in the Complaint. *See id.* at 4 (Registration p. 3 of 6); *id.* at final unnumbered page (appearing two pages after Registration p. 6 of 6). There is thus no way to determine from the filings whether the Photo is subject to copyright protection or, if so, whether DPI actually owns the copyright. As a result of the default, however, the court may not question the DPI's well-pleaded allegations that the Photo is registered and that it owns the rights.

4

in publishing a copy. *See* Complaint ¶¶ 7-13. Instead, the Complaint's only mention of CMI is the following:

> Plaintiff is informed and believes and thereon alleges that Defendants, and each of them, violated 17 U.S.C. § 1202 by intentionally removing and/or altering the copyright management information, in the form of metadata or information identifying the author of the Subject Photograph from at least one copy of the Subject Photograph, and distributing copyright management information with knowledge that the copyright management information had been removed or altered without authority of the copyright owner or the law, and distributing and publicly displaying the material, knowing that copyright management information had been removed or altered without authority of the copyright owner or the law, and knowing, or, with respect to civil remedies under section 1203, having reasonable grounds to know, that the conduct would induce, enable, facilitate, or conceal an infringement of any right under this title.

Complaint ¶ 23. Such conclusory, boilerplate parroting of the statutory text does not constitute a well-pleaded allegation for purposes of a motion for default judgment. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Jian Ping Lin v. Monda Window & Door Sys., Inc.*, 2018 WL 4403384, at *4 (E.D.N.Y. Aug. 7, 2018) (report and recommendation), *adopted*, 2018 WL 4388450 (E.D.N.Y. Sept. 14, 2018).

DPI makes no attempt to address this pleading defect. Indeed, in its supporting memorandum of law, it includes no virtually no argument at all in support of a finding of liability on its second cause of action. Rather, after devoting the bulk of its briefing to issues of liability and damages on the infringement claim, *see* Memo. at 6-17, DPI includes just one full page of briefing about the DMCA claim, most of it concerning damages. *See id.* at 17-18. The entirety of DPI's legal argument on liability is the following:

> [DPI] owns the copyright in the photograph at issue in this case. Carlson Dec., ¶ 4. The infringing copy of the Subject Work as displayed by Defendant did not include any copyright management information. Complaint, ¶ 13. The Complaint sufficiently alleges that Defendant removed or altered the copyright management information. Complaint, ¶ 23. As [PBH] has not appeared to respond to the complaint against it and has not explained why no copyright management information appears on the infringing photograph, [DPI] is entitled to a default judgment against [PBH] for violation of 17 U.S.C. § 1202(b) and an award of damages of at least $2,500 pursuant to 17 U.S.C. § 1202(c)(3)(B).

Memo. at 18.

5

I respectfully disagree with that argument. As explained above, the Complaint does not sufficiently allege the removal or alteration of CMI, and DPI's *ipse dixit* insistence to the contrary cannot overcome that defect. Moreover, there are two problems with DPI's argument that PBH "has not explained why no [CMI] appears on the infringing photograph[.]" First, the burden is on DPI to prove that it was removed, not on PBH to prove that it was not. Second, in the absence of any allegation that the Photo PBH copied had any CMI at all, it would be impractical for PBH, had it appeared, to try to prove this negative. Accordingly, because DPI has not successfully pleaded a viable claim under the DMCA, I respectfully recommend that the court deny that portion of its motion for default judgment and instead dismiss the Complaint's second cause of action.

    C.    <u>Relief</u>

        1.    <u>Damages</u>

PBH's default does not relieve DPI of its burden of proving damages to a "reasonable certainty." *Credit Lyonnais Securities (USA), Inc. v. Alcantara*, 183 F.3d 151, 155 (2d Cir. 1999) (citing *Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp.*, 109 F.3d 105, 111 (2d Cir. 1997)). The Copyright Act provides that "[a] copyright owner may elect … to recover, instead of actual damages and profits, an award of statutory damages for all infringements involved in the action[.]" 17 U.S.C. § 504(c)(1); *see also N.A.S. Import Corp. v. Chenson Enter., Inc.*, 968 F.2d 250, 252 (2d Cir. 1992). DPI seeks an award of statutory damages and has not adduced any evidence of actual damages. *See* Memo. at 12-16.

The court has discretion to award statutory damages between $750 and $30,000 for each infringed work. See 17 U.S.C. § 504(c)(1). DPI seeks the maximum award of $30,000 for the single

6

act of infringement at issue here 17 U.S.C. § 504(c)(1). That election obviates the need for DPI to prove that PBH acted willfully.[2]

The court has broad discretion to select the amount of the damages award within the pertinent statutory range. *See*, *e.g.*, *Fitzgerald Pub. Co., Inc. v. Baylor Pub. Co., Inc.*, 807 F.2d 1110, 1116-17 (2d Cir. 1986) (discussing "the wide discretion the Copyright Act affords the trial court in setting the amount of statutory damages"). In exercising that discretion, the court may consider several factors, including the expenses saved and the profits earned by the defendant, the revenues lost by the plaintiff, the deterrent effect of the judgment on the defendant and third parties, the defendant's cooperation in providing evidence of the infringing material, and the conduct and attitude of the parties. *See*, *e.g.*, *Bryant v. Media Right Prods., Inc.*, 603 F.3d 135, 144 (2d Cir. 2010); *Lowery v. Fire Talk LLC*, 2020 WL 5441785, at *3 (E.D.N.Y. June 29, 2020) (report and recommendation), *adopted*, 2020 WL 5425768 (E.D.N.Y. Sept. 10, 2020). "Statutory damages awarded for copyright infringement should bear some relation to actual damages suffered, but often do not correspond exactly, as statutory damages are often used in cases in which actual damages are difficult to prove." *Downs*, 2019 WL 1261406, at *2 (cleaned up); *Fitzgerald Pub. Co., Inc. v. Baylor Pub. Co., Inc.*, 670 F. Supp. 1133, 1140 (E.D.N.Y. Sept. 10, 1987), *aff'd*, 862 F.2d 304 (2d Cir. 1988).

It is DPI's burden to submit a record that suffices to justify the award it seeks, recognizing that PBH's default somewhat – but not entirely – limits its ability to do so. *See id.*; *Seelie v. Original Media Grp., LLC*, 2020 WL 136659, at *2 (E.D.N.Y. Jan. 12, 2020) (collecting cases). DPI has accordingly included records of its unsuccessful efforts to contact PBH, the fact that it has never sold a license for the Photo, the fees that others have paid to license the rights to publish other images from DPI (ranging from $575 to use an image on the cover of a marketing brochure in

---

[2] The court may award up to $150,000 per infringement where the violation is willful. *See* 17 U.S.C. § 504(c)(1)-(2).

North America for one year, to $1,500 for a one-year license to use another image in print and electronic media in North America for a year, up to $8,500 for a one-year print marketing campaign in North America). *See* Steger Decl. ¶¶ 2, 8; DE 11-9 (correspondence that failed to reach PBH); Memo. at 16; Carlson Decl. ¶ 8; DE 11-5 (invoices for unrelated licensing fees).

The information DPI has submitted, even viewed against the unavailable information it could not secure in discovery, does not support an award of the maximum amount of statutory damages. Notwithstanding its licensing of other images, DPI has never licensed the Photo at issue here – a relatively generic image of the United States flag –and even the sample fees it can command are far closer to (and straddle) the minimum statutory award. Nor has DPI adduced any evidence of any benefit that PBH enjoyed as a result of the infringement. While the default deprives DPI of the discovery that would help it prove the latter, it does not prevent DPI from identifying a theory under which PBH might have reaped some benefit – aside from avoiding a licensing fee – that might have sprung from using a generic flag photograph to illustrate one of its articles. The record thus includes no evidence to meaningfully distinguish this case from a case in which the minimum statutory award would be justified solely by virtue of the fact of infringement.[3] I therefore respectfully recommend that the court award the minimum statutory damages of $750. *See Downs*, 2019 WL 1261406, at *2-3 (adopting same approach).[4]

    2.    <u>Attorney's Fees</u>

DPI seeks reimbursement of $5,362 in attorney's fees to compensate its counsel for 9.2 hours of work by attorney Michael Steger ("Steger") at an hourly rate of $485 and 9.0 hours of work

---

[3] The fact that PBH published a copy of the Photo without including any CMI does not warrant a higher award. As discussed above, the record does not establish that the Photo ever included any CMI at all, much less that PBH intentionally stripped it away.

[4] If the court accepts my recommendation to deny summary judgment on the DMCA claim, it need not consider an appropriate award under that statute. However, even if the court finds that DPI has

by paralegal assistant Gianna Hroncich ("Hroncich") at an hourly rate of $100. *See* Steger Decl. ¶ 13-14 & Ex. H. The court has discretion to award DPI its reasonable attorney's fees. *See* 17 U.S.C. § 505.[5] As explained below, I recommend a lower award than DPI seeks.

Courts in this circuit assess fee applications using the "lodestar method," which multiplies the reasonable hourly rate by the reasonable number of hours expended. *See Millea v. Metro-North R.R.*, 658 F.3d 154, 166 (2d Cir. 2011) (quoting *Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*, 522 F.3d 182, 183 (2d Cir. 2008)). District courts have broad discretion, using "'their experience with the case, as well as their experience with the practice of law, to assess the reasonableness'" of each component of a fee award. *Fox Indus., Inc. v. Gurovich*, 2005 WL 2305002, at *2 (E.D.N.Y. Sept. 21, 2005) (quoting *Clarke v. Frank*, 960 F.2d 1146, 1153 (2d Cir. 1992)).

a.   <u>Hourly Rates</u>

A reasonable hourly rate is the rate a "reasonable, paying client" would be willing to pay. *See Manzo v. Sovereign Motor Cars, Ltd.*, 2010 WL 1930237, at *7 (E.D.N.Y. May 11, 2010) (stating that a presumptively reasonable fee "boils down to what a reasonable, paying client would be willing to pay, given that such a party wishes to spend the minimum necessary to litigate the case effectively.") (quoting *Simmons v. N.Y.C. Transit Auth.*, 575 F.3d 170, 174 (2d Cir. 2009) (quotation marks omitted)). Courts in this district typically approve hourly rates of $300 to $400 for law firm partners

---

successfully pleaded a DMCA claim, it should award no more than the minimum statutory damages of $2,500. DPI has not established that it suffered any harm as a result of the alleged removal of CMI (which it has not demonstrated occurred at all) that it did not also suffer as a result of the copyright infringement. Under such circumstances, nothing more than the minimum award is appropriate. *See, e.g., Kennedy v. Medgen, Inc.*, 2016 WL 6585812, at *3 n.1 (E.D.N.Y. Apr. 19, 2016) (court should not award duplicative damages under both DMCA and Copyright Act) (report and recommendation), *adopted*, 2016 WL 6601450 (E.D.N.Y. Nov. 5, 2016); *Tu v. TAD Sys. Tech.*, 2009 WL 2905780, at *4-5 (E.D.N.Y. Sept. 10, 2009) (same).

[5] The court would likewise have authority to award fees under the DMCA if it found that DPI had successfully pleaded a claim under that statute. *See* 17 U.S.C. § 1203(b)(5).

and $70-$100 for non-attorney professionals. *See Alvarez v. Sterling Portfolio Investment, LP*, 2017 WL 8790990, at * 8 (E.D.N.Y. Dec. 13, 2017) (collecting cases).

Steger reports that he has been practicing law since 1993 and has focused his practice for a decade on intellectual property law; he also serves in and has led various bar associations' intellectual property law committees. *See* Steger Decl. ¶ 13.[6] I therefore assume he should be compensated at the high end of the range of rates courts in this district normally approve for partners in comparable cases: namely, $400.[7]

Hroncich's claimed hourly rate of $100 is higher than courts in this district normally approve for the work of paralegal assistants. *See, e.g.*, *Sarmiento Perez v. Comhar Grp. LLC*, 2020 WL 1364908, at *8 (E.D.N.Y. Mar. 6, 2020) (report and recommendation; collecting cases), *adopted*, 2020 WL 1332200 (E.D.N.Y. Mar. 23, 2020); *Finkel v. Little Silver Elec.*, 2019 WL 6388845, at *4 (E.D.N.Y. Aug. 8, 2019) (report and recommendation; collecting cases), *adopted*, 2019 WL 4156920 (E.D.N.Y.

---

[6] Steger does not report when or where he was admitted. Public records reveal he was admitted to practice in in New York in 2007. *See* https://iapps.courts.state.ny.us/attorneyservices/search (last visited Oct. 26, 2020). Steger's website states that he is also licensed in other jurisdictions and practiced for firms in Los Angeles and for a television network before starting his own firm. *See* https://steger-law.com (same).

[7] In the one previous reported case involving a fee award for Steger's work, the court approved the rate Steger seeks here. However, in doing so, the court acknowledged it was exceeding the usual rates awarded in comparable cases, relied on a minority opinion in *Greathouse* rather than the panel opinion that constitutes controlling law, and expressed an unwillingness "to nickel and dime the rate in a case where defendants have failed to appear." *Prokos v. Grossman*, 2020 WL 729761, at *3 (E.D.N.Y. Feb. 13, 2020) (citing *Greathouse*, 784 F.3d at 119 ((Korman, D.J., concurring in part, dissenting in part)). I respectfully recommend against adopting that approach. PBH's default establishes the truth of DPI's well-pleaded, non-conclusory allegations, but it does nothing more – it neither excuses any pleading defects in the Complaint nor, as relevant here, entitles DPI to an award of unreasonably high attorney's fees. *See Greathouse*, 784 F.3d at 116 & n.17 (panel opinion). Moreover, regardless of whether the difference between the rates DPI seeks for its counsel and those normally applied in comparable cases can fairly be described as "nickel and dime" (I calculate that the rates Steger seeks for himself and Hroncich exceed appropriate rates by over 20 percent, resulting in an increase of over a thousand dollars in claimed fees), it is an increase that a court cannot fairly require a defaulting defendant to subsidize. A slightly unreasonable award is still unreasonable.

10

Aug. 30, 2019). In the absence of any reason to approve a higher rate in this case, I respectfully recommend a fee award based on an hourly rate of $75 for Hroncich's work.

### b. Compensable Hours

DPI asks the court to order PBH to reimburse it for the cost of 18.2 hours of work by its counsel, including 9.2 hours by attorney Steger and 9.0 hours by paralegal assistant Hroncich. *See* Steger Decl. ¶¶ 13-14 & Ex. H. While Steger' billing records reflect that amount of time billed, I respectfully conclude that the amount of time claimed is slightly excessive. A threshold problem is that the records rely on block billing. For example, on May 11, 2020, Hroncich billed 4.0 hours with the following description of multiple tasks: "Revise Steger declaration for default judgment motion; research and draft memorandum or points and authorities for default judgment[.]" DE 11-11 at 2. On the same day, Steger billed 3.2 hours for multiple tasks described thusly: "Revise declaration; revise notice of motion; research, draft and revise memorandum of points and authorities for motion for default judgment; prepare exhibits; file all documents for motion for default judgment[.]" *Id.* Such block billing, which impedes a court's effective review of the fee application, warrants a reduction of the claimed time. *See, e.g., Riley v. City of New York*, 2015 WL 9592518, at *3-4 (E.D.N.Y. Dec. 31, 2015) (citing *Hines v. City of Albany*, 613 F. App'x 52, 55 (2d Cir. 2015) (affirming 30 percent reduction for block billing)). In addition, although Steger commendably assigned a large share of work to a paralegal associate, potentially resulting in savings, he also inefficiently duplicated much of the work so assigned, as illustrated by the foregoing description of tasks billed on May 11, 2020. Moreover, given the boilerplate nature of many of the filings in this case and the fact that little if anything distinguishes this case from the many similar, routine copyright cases litigated to default judgments in this district every year, the amount of time Steger billed to this case seems unreasonably high.

11

One acceptable method for "trimming the fat" from a fee application, and one that consumes fewer judicial resources than a painstaking review of each time-entry, is for the court to impose an "across-the-board percentage" cut of the total amount of time claimed. *See In re "Agent Orange" Prods. Liab. Litig.*, 818 F. 2d 226, 237-38 (2d Cir. 1987); *Haifeng Xie v. Sakura Kai I Inc.*, 2020 WL 4587473, at *4 (E.D.N.Y. Mar. 12, 2020) (report and recommendation), *adopted*, 2020 WL 2569406 (E.D.N.Y. May 20, 2020); *Riley*, 2015 WL 9592518, at *3 (citing cases). I respectfully recommend a 20 percent reduction of the claimed hours to account for the block billing, the duplication of effort, and the unreasonably high number of hours billed for a routine default.

Accordingly, I respectfully recommend that the court award reasonable attorney's fees in the total amount of $3,484.00, as summarized in the following table.

| Name | Hourly Rate | | Hours | | Fee | |
| --- | --- | --- | --- | --- | --- | --- |
| | Claimed | Adjusted | Claimed | Adjusted | Claimed | Adjusted |
| Steger | $485.00 | $400.00 | 9.20 | 7.36 | $4,462.00 | $2,944.00 |
| Hroncich | $100.00 | $75.00 | 9.00 | 7.20 | $900.00 | $540.00 |
| Total | | | 18.20 | 14.56 | $5,362.00 | $3,484.00 |

3. <u>Costs</u>

DPI seeks the reimbursement for $460 in costs, including the $400 filing fee and $40 for service of process, and $20 for a disbursement described in the billing records as "Fee for Alexander Poole & Co." *See* Steger Decl. ¶ 15; DE 11-11 at 3-4.[8] The docket conclusively establishes that DPI paid the $400 filing fee. *See* DE 1. However, DPI has provided no vouchers or other documentation to support the other items. I therefore respectfully recommend an award of $400 in costs. *See Mango v. Northside Media Grp. LLC*, 2019 WL 4262018, at *3.

---

[8] Steger describes the total claims costs of $460 as "including the filing fee … and service of process" without further explaining the details but simply citing the billing records he attaches as an exhibit. Steger Decl. ¶ 15. However, the only item in the latter described as paying for service of process is the $40 service fee on February 28, 2020. Nothing in the record explicitly describes what the $20 payment to Alexander Poole & Co. paid for; if it was service of process, nothing explains why Steger paid two separate bills to serve PBH once.

12

III.   Recommendation

For the reasons set forth above, I respectfully recommend that the court deny the motion with respect to the Complaint's second count under the Digital Millennium Copyright Act, dismiss that cause of action for failure to state a claim, grant the motion as to the Complaint's first count of copyright infringement, and enter a default judgment in the total amount of $4,634.00, consisting of $750.00 in statutory damages, $3,484.00 in attorney's fees, and $400.00 in costs.

IV.   Objections

I respectfully direct the plaintiff to serve a copy of this Report and Recommendation on the defendant by certified mail, and to file proof of service no later than October 30, 2020. Any objections to this Report and Recommendation are due by November 10, 2020. Failure to file objections within this period designating the particular issues to be reviewed waives the right to appeal the district court's order. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2); *Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile, P.C.*, 596 F.3d 84, 92 (2d Cir. 2010).

SO ORDERED.

Dated:  Brooklyn, New York
        October 27, 2020

                                                            /s/
                                                    James Orenstein
                                                    U.S. Magistrate Judge

13